# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

KEVIN D. TURPIN,

   Plaintiff,

v.

RUTH COLBOURNE, *Warden*,
BENJAMIN PARKS, *Officer*,

   Defendants.

Civil Action No. TDC-18-1182

## MEMORANDUM OPINION

Plaintiff Kevin D. Turpin, who was previously confined at the Wicomico County Detention Center ("WCDC") in Salisbury, Maryland, has filed a self-represented civil rights Complaint pursuant to 42 U.S.C. §1983 alleging that on March 20, 2018 at WCDC, Defendant Correctional Officer Benjamin Parks maliciously slammed a cell door food slot on Turpin's hand and thus injured Turpin's fingers. As relief, Turpin seeks $100,000 in damages. Defendants Parks and Ruth Colbourne, Director of the Wicomico County Department of Corrections, have filed a Motion to Dismiss or Alternatively for Summary Judgment. In his memorandum in opposition to the Motion, Turpin states that he is abandoning his claim against Colbourne. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

Turpin was committed to WCDC on October 14, 2017. He was transferred to the Caroline County Detention Center on May 26, 2018 and returned to WCDC on July 10, 2018. Turpin was

transferred out of WCDC again on July 12, 2018 and is presently housed at the Dorsey Run Correctional Facility in Jessup, Maryland.

On March 20, 2018, at approximately 4:24 p.m., Parks and Corrections Officer II James Bare were distributing meal trays to inmates. According to Turpin, while at Turpin's cell, Parks angrily slammed the food slot door closed on Turpin's hand, leaving his index, middle, and ring fingers cut, bleeding, and swollen. Turpin asserts that he now has scar tissue. According to Parks, as he placed a food tray in Turpin's cell door food slot, Turpin pushed the tray away and forced it back toward him, stating "I don't fucking want that shit." Parks Aff. ¶ 2, ECF 37-1. Parks asserts that he pulled the tray from the slot, observed that the slot was clear, and then began to close the slider across the slot. As he did so, Turpin placed his hand in the track, causing the slider to pinch his fingers at the end of the track. Parks asserts that while he was trying to open the slot, Turpin pushed against the slider, forcing it off its track. The slider fell to the floor. Bare picked it up, replaced it in its track, and ordered Turpin to remove his hand and place it back inside the cell. Turpin refused to comply, banged on the door, and shouted that he needed medical attention. Parks left the housing unit to inform the medical unit that Turpin needed care.

Bare and Correctional Officer Wilna Cange escorted Turpin to the medical unit. Medical staff noted two small skin tears on Turpin's left middle and index finger with a small amount of blood, which was removed with a wound cleaner. Turpin's hand was swollen, discolored, and painful, and Turpin could not make a fist with the left hand. Medical staff offered Turpin pain medication and an ice pack and informed him that he would have an x-ray the next day. Turpin insisted that he wanted his hand x-rayed immediately, but he was escorted back to his cell.

2

Parks charged Turpin with destroying property, specifically, the food slot, in violation of WCDC rules. On March 26, 2018, a hearing officer, having viewed the video evidence, found Turpin not guilty.

## DISCUSSION

Defendants seek dismissal or summary judgment on the grounds that (1) Turpin failed to exhaust administrative remedies; and (2) the Complaint fails to state a constitutional claim for use of excessive force under the Eighth Amendment.

### I. Legal Standards

Defendants have filed their Motion as a Motion to Dismiss or Alternatively for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the Complaint, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

3

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature. *See Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002).

Here, Turpin has asserted that he requires discovery before the resolution of the Motion. Although there may be grounds for discovery before reaching the merits of the Motion, Turpin provides no persuasive argument for discovery before the resolution of the threshold issue of exhaustion of administrative remedies, as the relevant documents relating to that issue, including the WCDC inmate handbook, have already been provided. The Court therefore will construe the Motion as one for summary judgment as to the exhaustion of administrative remedies issue and consider the attached exhibits relevant to that issue.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the

4

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II. Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Turpin failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was

5

prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S. Ct. at 1859-60.

The WCDC has an established grievance procedure under which inmates may file a grievance at any time by sending a kiosk request to the Classification Office. Inmates then receive a grievance form which they must complete and seal in the provided envelope. The grievance is forwarded to the Intel Unit for review, investigation, and resolution. On October 14, 2017, the day he entered WCDC, Turpin received a copy of the Inmate Guidebook which explains the grievance procedure and signed an acknowledgment of receipt. According to the declaration of Warden Colbourne, a review of Turpin's Inmate Grievance File revealed that he filed numerous grievances while at WCDC, thus illustrating that he understood and was capable of following the grievance procedure. However, there is no record of any grievance filed against Parks or any other correctional officer as a result of the food slot incident on March 20, 2018. This evidence establishes that Turpin did not exhaust administrative remedies.

Despite the absence of any record of such a filing, Turpin claims that he filed a grievance relating to the March 20, 2018 incident the same day it occurred. Turpin, however, offers no explanation for the absence of any record of the grievance, other than his vague statement in his Opposition that he "can only assume" the documents have "mysteriously disappeared" or "these documents have been purposely misplaced." Opp'n at 5, ECF No. 29. Turpin, however, provides no supporting affidavits or documentation to support these assumptions or beliefs. Moreover, the

March 20, 2018 incident was the subject of a March 26, 2018 disciplinary hearing against Turpin initiated by Parks, which resulted in the dismissal of the charges against Turpin, yet the hearing records contain no sign that Turpin had already filed, or had any intention to file, a grievance relating to that incident. Where Turpin has acknowledged that he understood that an inmate must "use the prison grievance system" before filing suit, Opp'n at 2, and he regularly filed grievances documented in his Inmate Grievance File, the lack of any follow-up inquiry about his alleged grievance belies the notion that Turpin actually filed the required administrative grievance.

Furthermore, even if Turpin had submitted a written grievance, he acknowledges that at the time he filed suit, he had received no written response to it, such that it had not been resolved. Yet without any follow-up inquiry about the grievance, Turpin filed suit on April 19, 2018, less than one month after the incident and the alleged submission of a grievance. Where Turpin did not even give WCDC a reasonable period of time to conduct the review, investigation, and resolution of his grievance, as contemplated by the Inmate Guideline Book, the Court concludes that regardless of whether Turpin actually submitted a grievance, he did not exhaust administrative remedies before filing suit. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds) (holding that inmates must exhaust before filing suit); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (same); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534-35 (7th Cir. 1999) (same); *see also Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624 (D. Md. 2015) ("Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies."). Finally, these same facts—Turpin's admitted knowledge and prior use of the grievance process, the lack of any follow-up inquiry by Turpin on any submitted grievance, and the filing of a civil lawsuit within a month—reveal that there is no

basis to support a claim that the administrative process was unavailable to Turpin. *See Ross*, 136 S. Ct. at 1859-60.

Where Turpin was aware of how to exhaust his administrative remedies, WCDC records contain no evidence that he filed a grievance relating to the incident with Parks, and Turpin did not wait for the resolution of any purported grievance before filing suit, the Court concludes that Turpin has not created a genuine issue of material fact on the issue of exhaustion of administrative remedies. Because exhaustion of administrative remedies is mandatory, *see Porter*, 534 U.S. at 532, the Court will grant the Motion. Accordingly, the Court need not address Defendants' remaining arguments.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or Alternatively Motion for Summary Judgment, will be GRANTED. All claims against Defendants will be DISMISSED. A separate Order shall issue.

Date: September 9, 2019

THEODORE D. CHUANG
United States District Judge